The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Joshua MARQUEZ, Defendant–Appellant.

No. 02CA0204.

Colorado Court of Appeals, Div. IV.

July 1, 2004.

As Modified on Denial of Rehearing July 29, 2004.

Certiorari Denied Feb. 14, 2005.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.

994

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Jud Lohnes, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.

Defendant, Joshua Marquez, appeals the judgment of conviction entered on a jury verdict finding him guilty of vehicular homicide, first degree aggravated motor vehicle theft, and leaving the scene of an accident involving death. We affirm.

Defendant was driving a stolen van through a residential area at approximately twice the posted speed limit when he struck a car driven by a woman who had just backed out of her driveway. The woman died from the injuries she received.

## I.

■ Defendant contends the trial court failed to instruct the jurors properly on the law of causation and independent intervening cause in connection with the charge of vehicular homicide. We disagree.

Section 18–3–106(1)(a), C.R.S.2003, states: "If a person operates or drives a motor vehicle in a reckless manner, and such conduct is the proximate cause of the death of another, such person commits vehicular homicide."

■ Under this statute, a defendant is responsible for the death of another if the death is a natural and probable consequence of the defendant's misconduct. Unlawful conduct that is broken by an independent intervening cause cannot be the proximate cause of the death of another. *People v. Gentry*, 738 P.2d 1188 (Colo.1987); *see also People v. Stewart*, 55 P.3d 107 (Colo.2002)(*Stewart II*).

■ An independent intervening cause is an act of an independent person or entity that destroys the causal connection between the defendant's act and the victim's injury and thereby becomes the cause of the victim's injury. To qualify as an intervening cause, an event must be unforeseeable and one in which the accused does not participate. Simple negligence is foreseeable, and thus may not constitute an independent intervening cause. However, gross negligence is unforeseeable behavior that may serve as an intervening cause. *Stewart II, supra.*

■ Although the causation element of the charged offense must be submitted to the jury, not all potential defenses to this element are jury issues. Only defenses raised and supported by some evidence fall within the province of the jury. Thus, a defendant seeking an intervening cause instruction

must present some credible evidence to support the defense. The trial court must make the threshold determination of whether the intervening cause defense can be supported by the evidence. *People v. Saavedra–Rodriguez*, 971 P.2d 223 (Colo.1998)(where defendant's offer of proof was insufficient to show that allegedly improper medical care amounted to gross negligence, court of appeals erred in ruling that intervening cause issue should have gone to the jury); *see Stewart II, supra* (holding that intervening cause instruction would have been incorrect because facts of case did not implicate an intervening cause); *People v. Lopez*, 97 P.3d 277, 2004 WL 439384 (Colo.App. No. 02CA0443, Mar. 11, 2004)(no right to intervening cause instruction where other driver's conduct, even if negligent, did not amount to gross negligence).

Here, defendant tendered instructions on the affirmative defense of independent intervening cause, based on language in *People v. Stewart*, 26 P.3d 17 (Colo.App.2000)(*Stewart I*), which was reversed in *Stewart II*. The court did not give defendant's tendered instructions. Instead, it instructed the jury, in the elemental instruction on vehicular homicide, that the prosecution had to prove beyond a reasonable doubt that, along with other elements, defendant's conduct was the proximate cause of the death of another. It then gave the jury the following instruction defining "proximate cause":

"Proximate cause" means a cause which in the natural and probable sequence produced the claimed injury. It is a cause without which the injury would not have been sustained.

If more than one act or failure to act contributed to the claimed injury, then each act or failure to act may have been a "proximate cause" of the injury. A proximate cause does not have to be the only cause or the last or nearest cause. It is sufficient if the natural and probable way that some act or failure to act caused some or all of the injury.

One's conduct is not a "proximate cause" of another's injuries, however, if, in order to bring about such injuries, it was necessary that his or her conduct combine with or join with an "intervening cause" which also contributed to the cause of the injuries.

An "intervening cause" is a cause which a reasonably careful person under the same or similar circumstances would not have . . . reasonably foreseen.

A "simple act of negligence" by another person cannot constitute an "intervening cause." Only "gross negligence," which is unforeseeable, can be considered an "intervening cause."

The court also instructed the jury on the meaning of "simple negligence" and "gross negligence," and on the concept of foreseeability. These definitional instructions appear to be based on civil jury instructions addressing the same topics.

We conclude the trial court properly refused defendant's tendered instructions because defendant did not make the threshold showing necessary to support the affirmative defense of independent intervening cause.

The alleged intervening cause on which defendant relies was the victim's act of backing out of her driveway into the residential street on which the accident occurred. Three witnesses testified about that act at trial. A man who was in the vicinity at the time of the accident testified that the victim was backing out of her driveway and stopped to let him pass by on his motorcycle. Defendant's girlfriend testified that defendant told her the victim "pulled out in front of him." An accident reconstruction expert testified that the victim had backed out of her driveway and had driven in and across the southbound lane to get to the northbound lane. The van struck her car just as the car crossed the center line of the street.

There was no evidence that anything the victim did could amount to more than, at most, simple negligence. In contrast to *People v. Gentry, supra,* and *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316 (1975), there was no testimony, expert or otherwise, that the victim's conduct caused her death. Nor did defendant make any offer of proof that would support his intervening cause theory. *Cf. People v. Saavedra–Rodriguez, supra* (defense made offer of proof that medical practitioners would testify, in support of in-

tervening cause defense, regarding errors in diagnosis and treatment of victim).

Moreover, although defendant tendered intervening cause instructions, he did not argue at trial that the victim's act was the cause of her death. Rather, his theory was that he was not the driver of the stolen van, and that was the focus of his opening statement and closing argument. The prosecutor had at one point agreed that an intervening cause instruction should be given. However, although defense counsel did not reference the issue in his closing, the prosecutor argued to the jury in rebuttal closing that the victim's act could not have been an intervening cause because it was foreseeable.

We agree with the People that the victim's act of backing out of her driveway after waiting for a motorcyclist to pass and then briefly proceeding north in the southbound lane to reach the northbound lane was, as a matter of law, not unforeseeable on a residential street, and therefore was not gross negligence. Accordingly, absent evidence of gross negligence, the trial court properly refused defendant's tendered affirmative defense instructions. *See People v. Lopez, supra.*

The instructions given by the court required the jurors to find that the prosecution had proved the causation element of vehicular homicide beyond a reasonable doubt, and they gave the jurors a correct definition of "proximate cause." *See, e.g., People v. Gentry, supra.* The additional references to intervening cause and related concepts were superfluous. However, any error inured to defendant's benefit, in that it suggested the existence of a defense to the causation element that was unwarranted in light of the evidence presented.

## II.

■ Defendant next contends that his aggravated motor vehicle theft conviction must be vacated because, although there was evidence that he drove "recklessly," the prosecution did not prove that he "knowingly" used the stolen vehicle in the commission of a crime. We are not persuaded.

A person commits first degree aggravated motor vehicle theft if he or she "knowingly obtains or exercises control over the motor vehicle of another without authorization or by threat or deception," and one of eight specified aggravating factors is shown, including, as relevant here, that the person "[u]ses the motor vehicle in the commission of a crime other than a traffic offense." Section 18–4–409(2)(d), C.R.S.2003; *People v. Garcia,* 17 P.3d 820 (Colo.App.2000); *see also People v. Andrews,* 632 P.2d 1012, 1016 (Colo.1981)(§ 18–4–409(2)(a), C.R.S.2003, which refers to aggravated motor vehicle theft involving retention of vehicle for more than seventy-two hours, "contemplates a culpable mental state involving an awareness by the offender that he is obtaining or exercising control over the vehicle of another and that his control is indeed without authorization").

Defendant argues that he could not be convicted of aggravated motor vehicle theft under § 18–4–409(2)(d) because the crime he was committing when he used the stolen van had a mens rea of "recklessly," a lesser mental state than the "knowingly" that applies to the elements of aggravated motor vehicle theft. *See* § 18–3–106(1)(a) ("If a person operates or drives a motor vehicle in a reckless manner, and such conduct is the proximate cause of the death of another, such person commits vehicular homicide."); § 18–1–501(4), C.R.S.2003 (enumerating culpable mental states under criminal code); § 18–1–501(6), C.R.S.2003 (defining "knowingly"); § 18–1–501(8), C.R.S.2003 (defining "recklessly").

In so arguing, defendant relies on the principle that, if a statute defining an offense contains a specific mens rea requirement, that mental state is "deemed to apply to every element of the offense unless an intent to limit its application clearly appears." Section 18–1–503(4), C.R.S.2003; *see People v. Coleby,* 34 P.3d 422 (Colo.2001).

■ However, defendant overlooks the related principle that "elements of a particular offense may have differing mens rea requirements, and ... the culpable mental state of a statute may speak to conduct, circumstances, result, or any combination thereof, but not necessarily to all three." *People v. Coleby, supra,* 34 P.3d at 424.

In *Copeland v. People*, 2 P.3d 1283 (Colo. 2000), the supreme court relied on that distinction in concluding that § 18–4–105(2), C.R.S.2003, which provides that fourth degree arson is committed when a person "knowingly or recklessly starts or maintains a fire ... and by so doing places another in danger of death or serious bodily injury," evidenced a legislative intent to apply the "knowingly or recklessly" mental state to the offender's conduct of starting or maintaining a fire, but not to the result of placing another in danger. Thus, one who knowingly or recklessly starts a fire is responsible for the fire's result, whether or not the arsonist was aware of or intended that result.

Similarly, in *People v. Thomas*, 729 P.2d 972 (Colo.1986), the supreme court distinguished among levels of mental culpability applicable to elements of an offense in holding that attempted reckless manslaughter was a cognizable offense. The court disagreed with the court of appeals division's conclusion that recklessness was a level of mental culpability incompatible with the concept of an intentional act; instead, the court held, attempted reckless manslaughter required simply that the offender have the intent to engage in and complete the risk-producing act or conduct. *See also People v. Benzor*, 100 P.3d 542, 2004 WL 1469379 (Colo.App. No. 02CA2354, July 1, 2004)(mens rea of "knowingly" applies only to conduct of offense of escape, not to phrase, "following conviction of a felony").

Similarly here, we conclude that the plain language of § 18–4–409(2)(d) evinces a legislative intent to impose liability for first degree aggravated motor vehicle theft whenever a person who has knowingly stolen a motor vehicle uses that motor vehicle in the commission of a crime other than a traffic offense, regardless of the mens rea associated with the particular crime committed. By expressly excepting traffic offenses from the offenses supporting liability under § 18–4–409(2)(d), the General Assembly evidenced an intent that all crimes other than traffic offenses would support such liability. It could have further excepted crimes with mental states less culpable than "knowingly," but it did not.

Thus, even assuming that a person charged under § 18–4–409(2)(d) could not be convicted if his or her use of the motor vehicle was other than "knowing"—a situation not present here, where it is undisputed that defendant knew he was using the van when he struck the victim—we nevertheless perceive no basis for either (1) applying the mens rea of "knowingly" to the result of that conduct, or (2) concluding that crimes with a lesser mental state than "knowingly" cannot subject a person to liability under § 18–4–409(2)(d).

Defendant concedes the prosecution presented sufficient evidence that the van was stolen, and he does not dispute the jury's finding that he possessed the van without authorization. The evidence likewise does not permit the inference that defendant was unaware that he was using a stolen vehicle when he killed the victim. Accordingly, his conviction for first degree aggravated motor vehicle theft will not be set aside based on insufficiency of the evidence. *See Kogan v. People*, 756 P.2d 945 (Colo.1988).

### III.

■ Defendant contends that, because vehicular homicide was identified in the charging document as the predicate offense for the first degree aggravated motor vehicle theft charge, it is a lesser included offense of the theft offense. Therefore, he argues, his vehicular homicide conviction and sentence must be vacated. We do not agree.

■ A defendant may be convicted of more than one offense arising out of a single incident if he or she has violated more than one statute. However, in the absence of legislative authorization, a defendant may not be convicted of more than one offense if one offense is a lesser included offense of the other. *People v. Moore*, 877 P.2d 840 (Colo. 1994).

■ Section 18–1–408(5)(a), C.R.S.2003, defines a lesser included offense as one "established by proof of the same or less than all the facts required to establish the commission of the offense charged." Case law pertaining to the rule of merger treats an offense as lesser included when proof of the essential elements of the greater offense necessarily establishes the elements required to prove the lesser offense. *People v. Moore*, *supra*.

In *Meads v. People,* 78 P.3d 290, 295 (Colo. 2003), the supreme court held that second degree aggravated motor vehicle theft was not a lesser included offense of felony theft because, upon application of the strict elements test to the relevant statutes, the latter offense did not "*necessarily* include all of the essential elements of aggravated motor vehicle theft" (emphasis in original); rather, "although the offense of aggravated motor vehicle theft may be established by the facts establishing felony theft in a particular case, it is not necessarily established by proof of the same or less than all of the statutory elements of felony theft." In so concluding, the court held inapplicable the cases, relied on by defendant here, holding that a predicate felony is a lesser included offense of felony murder premised upon commission of that felony.

In *People v. Rodriguez,* 914 P.2d 230, 286 (Colo.1996), the supreme court rejected the defendant's argument that his convictions for first degree murder, first degree sexual assault, and second degree kidnapping merged into his conviction for first degree aggravated motor vehicle theft "because those convictions were predicate 'elements' of first-degree aggravated motor vehicle theft." In *Rodriguez,* as here, both the information and the guilt phase jury instructions had specifically cited these as the predicate crimes for the charge that the defendant had committed first degree aggravated motor vehicle theft under § 18–4–409(2)(d) by using the vehicle in the commission of a crime. Nevertheless, as in *Meads,* the *Rodriguez* court rejected the defendant's attempt to analogize his case to cases requiring merger of the conviction for the underlying causal felony into the conviction for felony murder. The court explained:

> In felony murder, the underlying offenses are less serious than felony murder itself. Such need not be the case with aggravated motor vehicle theft, nor is it the case here. Simply put, Rodriguez' convictions for first-degree murder, first-degree sexual assault, and second-degree kidnapping are not "lesser" offenses than the offense of aggravated motor vehicle theft but, rather, are significantly more serious.

*People v. Rodriguez, supra,* 914 P.2d at 287 (citation omitted).

Observing that motor vehicle theft is an offense against property while the other charged offenses were offenses against a person, the *Rodriguez* court concluded that merging the offenses against a person into the property offense conviction would create a result that was not only anomalous but absurd.

Here, when the statutory elements of aggravated motor vehicle theft and those of vehicular homicide are compared, it is evident that vehicular homicide is not a lesser included offense of aggravated motor vehicle theft under the strict elements test, even if its proof might satisfy an element of aggravated motor vehicle theft under the facts of a particular case. *See Meads v. People, supra; People v. Rodriguez, supra.*

Moreover, reckless vehicular homicide is not a "lesser" offense than first degree aggravated motor vehicle theft. Both are class four felonies, and vehicular homicide involves the death of a person rather than simply a misappropriation of property. Thus, as in *Rodriguez,* vehicular homicide cannot be deemed a lesser offense that would merge into defendant's conviction of first degree aggravated motor vehicle theft.

The judgment is affirmed.

Judge ROY and Judge LOEB concur.